UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOYCE DUNLAP,

      Plaintiff,

                              Case No. 15-cv-14022

      v.

                            UNITED STATES DISTRICT COURT JUDGE

UNITED OUTSTANDING PHYSICIANS,      GERSHWIN A. DRAIN
   PLLC; UOP, LLC; ASSURANCE
   PAYROLL, LLC D/B/A TERRA 1,          UNITED STATES MAGISTRATE JUDGE
GLOBAL HR GROUP; AND GLOBAL HR I,     R. STEVEN WHALEN

      Defendants.

**OPINION AND ORDER: (I) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [23] AND (II) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [22]**

## I.    Introduction

This is a Family and Medical Leave Act ("FMLA") case. Defendants counterclaim with a breach of contract action. The relationship between the parties in this case (such as who is the employer and how many employees are employed) is vital to this case. However, those basic facts are unclear. Pending before the Court is Plaintiff's Motion for Summary Judgment [22] and Defendants' Motion for Summary Judgment [23]. Defendants' Motion focuses on the FMLA and is fully briefed by both parties. Plaintiff's Motion for Summary Judgment focuses on breach of contract. Defendants did not respond to Plaintiff's motion, nor did the Defendants

-1-

mention it during oral argument. For the following reasons the Court will **DENY** Defendants' Motion for Summary Judgment [23] and **GRANT** Plaintiff's Motion for Summary Judgment [22].

## II.    <u>Facts</u>

This suit is brought against United Outstanding Physicians, PLLC; UOP, LLC; and Assurance Payroll, LLC, (collectively "Defendants"). The relationship between the three Defendants is unclear and subject to part of the dispute in the instant Motions for Summary Judgment. As best as the Court can tell United Outstanding Physicians, PLLC is virtually synonymous with UOP, LLC. Dkt. No. 35-2, p. 4 (Pg. ID 452). Together, United Outstanding Physicians, PLLC and UOP, LLC connect health plans with physicians in order to provide medical services. *Id.* The CEO of UOP, LLC is Dr. Yasser Hammoud. *Id.*

Assurance Payroll, LLC (hereinafter "Assurance") does business as Terra 1, Global HR Group, and Global HR I. Assurance and its affiliates provide payroll and other services to United Outstanding Physicians, PLLC and UOP, LLC. Joyce Dunlap (hereinafter "Plaintiff") was employed as a "Physician Liaison". Dkt. No. 35-4, p. 7 (Pg. ID 481). Plaintiff began working on October 15, 2007. Dkt. No. 27-2, p. 2 (Pg. ID 341). Plaintiff claims that she is unsure who her actual employer was.

On October 3, 2013, Plaintiff's son was diagnosed with leukemia. Dkt. No. 27-2, p.4 (Pg. ID 343). On or about October 15, 2013 Plaintiff requested family

medical leave. Dkt. No. 27-7, p. 2 (Pg. ID 366). On October 22, 2013 Plaintiff was granted leave and assured that she would not be dropped from her health insurance. Dkt. No. 23-3, p. 2 (Pg. ID 269). On November 1, 2013, Plaintiff's health insurance was discontinued. Dkt. No. 27-2, p. 5 (Pg. ID 344). This litigation followed. To date, Plaintiff has not returned to work. To avoid confusion, additional facts are explained during the Discussion section.

### III.   <u>Legal Standard</u>

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." C*ehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## IV.  <u>Discussion</u>

The FMLA prohibits interference and retaliation. Interference occurs when an employer "interfere[s] with, restrain[s], or den[ies] the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). Retaliation occurs when an employer "discharge[s] or in any other manner discriminate[s] against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2).

### A.  Interference

"An employee may prove FMLA interference using the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427 (6th Cir. 2014). "[T]he employee has the initial burden of establishing his prima facie case; if he does so, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions; finally, the employee has the burden of rebutting the employer's proffered reasons by showing them to be pretextual." *Id.* (citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 761–62 (6th Cir. 2012)).

"To establish a claim for interference under the FMLA, a plaintiff must demonstrate that[:]

(1) he is an eligible employee,
(2) the defendant is an employer as defined under the FMLA,

-4-

(3) the employee was entitled to leave under the FMLA,
(4) the employee gave the employer notice of his intention to take leave, and
(5) the employer denied the employee FMLA benefits to which he was entitled."

*Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 308 (6th Cir. 2016) (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)).

According to the Defendants, the Plaintiff cannot establish a prima facie case for interference. Defendants argue that the Plaintiff "cannot establish that she was an *eligible employee*, or that any of the defendants are *covered employers*, or that she was *entitled to FMLA leave*, or that she was *denied benefits or rights*." Dkt. No. 23, p. 11 (Pg. ID 252) (emphasis in original). The Court will address each argument.

### i.    Eligible Employee

29 U.S.C. § 2611 puts forth the definitions for the FMLA.

"The term 'eligible employee' means an employee who has been employed--
**(i)** for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and
**(ii)** for at least 1,250 hours of service with such employer during the previous 12-month period."

In this case, it seems undisputed that Plaintiff worked at least 12 months and for at least 1,250 hours. Dkt. No. 27, p. 15 (Pg. ID 324). Therefore, Plaintiff can establish that she was an eligible employee based on her hours and length of employment. Summary judgement on this element is thus improper.

-5-

### ii.    Covered Employer and Entitlement to Leave

The closer issues are who employed the Plaintiff and how many employees were employed. If the number of employees is less than 50, Plaintiff is not entitled to leave and this claim must fail.

The FMLA explains:

> "The term 'eligible employee' does not include--
> **(i)** any Federal officer or employee covered under subchapter V of chapter 63 of Title 5; or
> **(ii)** *any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50.*"

29 U.S.C. § 2611 (emphasis added). Plaintiff brings this claims against United Outstanding Physicians, PLLC, UOP, LLC, and Assurance Payroll, LLC and claims that the three entities are either (1) joint employers or (2) integrated employers. Dkt. No. 27, p. 15 (Pg. ID 324). According to the Plaintiff, aggregating the employees of each Defendants will result in more than 50 employees.

### 1.  Joint Employers

"Where two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers under the FMLA." 29 C.F.R. § 825.106(a). "Employees jointly employed by two employers must be counted by both employers, whether or not maintained on one of the employer's payroll, in determining employer coverage and employee

eligibility." 29 C.F.R. § 825.106(d). "[A] joint employment relationship generally will be considered to exist in situations such as:

> (1) Where there is an arrangement between employers to share an employee's services or to interchange employees;
> (2) Where one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or,
> (3) Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer."

29 C.F.R. § 825.106(a)

## 2. Integrated Employers

FMLA regulations further specify that "[s]eparate entities will be deemed to be parts of a single employer for purposes of FMLA if they meet the integrated employer test. Where this test is met, the employees of all entities making up the integrated employer will be counted in determining employer coverage and employee eligibility. A determination of whether or not separate entities are an integrated employer is not determined by the application of any single criterion, but rather the entire relationship is to be reviewed in its totality. Factors considered in determining whether two or more entities are an integrated employer include:

> (i) Common management;
> (ii) Interrelation between operations;
> (iii) Centralized control of labor relations; and
> (iv) Degree of common ownership/financial control."

29 C.F.R. § 825.104(c)(2) (amended on other grounds by 82 FR 2221-01).

### 3. Evidence of Joint or Integrated Employers

One common factor between joint employers and integrated employers is the degree of control that one employer has over another's business or employees. The Defendants argue that Assurance (and its affiliates) did not exercise any control over UOP, LLC or United Outstanding Physicians, PLLC. The Defendants' argument seems intuitively correct—it is unusual for a payroll entity to exercise control over the business that it services. However, the evidence before the Court defies that intuition.

The Court first turned to the Plaintiff's W-2s to determine what company employed her. However, federal filings do not conclusively establish who employed the Plaintiff. In 2011 and 2012, Plaintiff's W-2s list her employer as Global HR 1, LLC. Dkt. No. 27 (Pg. ID 325). In 2013, Plaintiff's W-2 lists her employer as Terra 1, LLC. *Id.* Mr. Hammoud, the CEO of UOP, LLC, admits that the W-2s issued to UOP employees do not identify UOP, LLC or United Outstanding Physicians, PLLC as the employer.

Unable to discern the Plaintiff's employer from her W-2s, the Court next analyzed the interrelation between Defendants. Evidence shows UOP, LLC employees act authoritatively on behalf of both Terra 1, LLC and Global HR. For example, on November 17, 2014, an Administrative Law Judge held an unemployment hearing. Dkt. No. 35-4. In that hearing, the plaintiff is listed as the

-8-

claimant and Terra 1, LLC is the listed employer. *Id.* In that same hearing, Susan Hammoud and Charlotte Elliot (the Office Manager and Administrative Assistant at UOP's offices) appeared on behalf of the Terra 1, LLC. *Id.* Additionally, the Plaintiff produced evidence showing that Dr. Alazzawi, a Director at UOP, LLC, signed important employer documents on behalf of both UOP, LLC and Global HR. *See* Dkt. Nos. 35-13, 27-11.Therefore, at least three different entities seem to have some sort of overlapping control of company finances and business operations. Based on that control, reasonable jurors could disagree on whether UOP, LLC is a joint or integrated employer with Assurance and its affiliates.

### 4. Total Number of Employees

Even assuming a joint or integrated employer, the Defendants argue that the "Plaintiff has not pointed to any evidence (and cannot do so) that shows that UOP, LLC and the payroll services companies collectively had 50 or more employees." Dkt. No. 31 (Pg. ID 405). However, the Defendants' argument misstates who carries the burden of production. "The *movant* has the burden of showing that there is no genuine issue of fact[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (emphasis added). To that end, the Defendants fail to sufficiently establish that they have less than 50 employees.

In this case, Assurance is a potentially integrated or joint employer with UOP, LLC. It seems uncontradicted that UOP, LLC employs at most 15 people. *See* Dkt.

No. 35-2 (Pg. ID 458). However, given Assurance's structure and management, it is unclear how many employees Assurance has.

Assurance owns or did business as at least six different entities: Terra 1, Global HR Group, Global HR I, Terra I, LLC, Global HR Group, LLC and Global HR 1, LLC. Dkt. No. 35-6, p. 4 (Pg. ID 505). The names of these entities are very similar. Nevertheless, slight differences in names appear to identify completely separate entities. Some of the entities operate as payroll companies, while others provide IT services. *Id.* Terra 1, LLC, Global HR Group, LLC and Global HR 1, LLC provided payroll services to UOP, LLC. Dkt. No. 31-1, ¶ 1 (Pg. ID 413). According to Mostafa Afr, President of Assurance, Assurance "never had any employees during the period in question." Dkt. No. 31-1, p. 2 (Pg. ID 403). Mr. Afr also declared that Terra 1, LLC and Global HR 1 LLC "never had any employees during the period." *Id.* Notably, Mr. Afr fails to account for how many employees Global HR, LLC had during the period in question.

Although Assurance technically had no employees, it issues payroll services to over 600 clients. Dkt. No. 35-6, p. 6 (Pg. ID 507). This is possible because Assurance has a complicated network of sub-departments and parent companies. According to Mr. Afr, Assurance is a single department inside of one large company. Dkt. No. 35-6, p. 5 (Pg. ID 506) ("Q. How can you operate a business with no employees? A. Well, basically it is one company, but Assurance is like [sic]

-10-

department."). As best as the Court has determined, Assurance is a department for a CPA firm called A&A Management Service. *Id.* A&A Management Service is controlled by another entity called Afr CPA. *Id*. A&A Management has between 16 and 22 employees. Dkt. No. 35-6, p. 5 (Pg. ID 506). However, Mr. Afr fails to account for how many employees Afr CPA has.

The Defendants fail to demonstrate that there is no genuine issue of fact regarding the number of employees because the Defendants' evidence is incomplete and jumbled. The Defendants admit that Assurance does payroll in the names of at least three different entities. However, the Defendants fail to produce any evidence with respect to one of those three payroll entities. Next, the Defendants admit that Assurance is owned by A&A Management Service, which is controlled by Afr CPA. However, the Defendants fail to produce any evidence with respect to how many employees Afr CPA has. It seems that Mr. Afr has created a shell game with sub departments and parent companies—that he separates and/or combines when it is convenient. Dkt. No. 35-6, p. 6 (Pg. ID 507). But, Mr. Afr fails to account for the employees within each relevant entity.

The contours of this corporate network become even more unclear because the Defendants speak in general terms like "Terra" and/or "Global"—taking for granted that one general term could refer to multiple entities. Without the complete information, the issue is not so one-sided to eliminate reasonable disagreement. Even

-11-

assuming joint or integrated employers, the number of employees remains unclear. Summary judgment, on this issue, is therefore improper.

### iii.    Denial of Benefits or Rights

Defendants later argue that summary judgment is proper because the Plaintiff cannot establish that the Defendants denied any benefits or rights. "Qualifying employees who return to work within the 12–week period of their unpaid medical leave are entitled to be restored to 'the position of employment held by the employee when the leave commenced,' or 'to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.' " *Grace v. USCAR*, 521 F.3d 655, 669 (6th Cir. 2008) (citing 29 U.S.C. § 2614(a)(1)). "For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits[1]), the same benefits would be required to be provided to an employee on unpaid FMLA leave." 29 C.F.R. § 825.220. Therefore, to prevail on an interference claim, Plaintiff must demonstrate that she was denied benefits or that she returned to work within 12 weeks and that Defendants failed to reinstate her. Here, Plaintiff claims that she was denied health benefits and terminated.

---

[1] Although federal regulations exclude health benefits from being covered by the FMLA, Defendants' written policies grant health benefits while on family medical leave.

-12-

### a. Denial of Health Benefits

First, Defendants argue that Plaintiff's health insurance coverage "was terminated by the carrier, and not UOP." Dkt. No. 23, p. 14 (Pg. ID 255). Dr. Hammoud's affidavit states that UOP, LLC did not terminate Plaintiff's health insurance coverage. *See* Dkt. No. 23-1, ¶¶ 8–10 (Pg. ID 260) ("I learned that Total Health required Ms. Dunlap to work a minimum of 30 hours per week in order to continue and qualify for health insurance. In addition, I was advised that I could not pay her premium out of my own pocket."). However Dr. Hammoud's affidavit is in conflict with UOP, LCC's written policies and an email exchange between the Plaintiff and Sue Hammoud.

UOP, LLC's Family and Medical Leave Summary states:

> "During an approved family or medical leave, *your health benefits will be provided as though you had continued to work*. If you have family coverage, please arrange with the payroll office to submit timely monthly payment for your portion, if any, of the health insurance premiums. To the full extent allowed under the FMLA, [Company] reserves the right to recover health insurance premiums from employees who fail to return to work at the end of an FMLA-qualifying leave."

Dkt. No. 27-3, p. 3 (Pg. ID 348) (emphasis added). UOP, LLC's FMLA policy does not include the 30-hour-per-week requirement that Dr. Hammoud mentioned. Moreover, an email exchange from Sue Hammoud instructs the Plaintiff that her health care will continue if she "put[s] in writing that [she was] unable to enroll on [her] husband's insurance and [she] will attempt to repay [her] insurance once [she]

-13-

return[s] to work." *See* Dkt. No. 23-3. Furthermore, both Dr. Hammoud and Sue Hammoud confirmed that the Plaintiff applied for family medical leave and that leave was granted.

The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In this case, neither side disputes that Plaintiff's health insurance coverage was actually terminated. However, the Defendants tip-toe around whether they actually granted family medical leave and who is actually responsible for the termination of health benefits. On these facts, a juror could reasonably infer that the Defendants granted family medical leave. Although Defendants never explicitly say they are granting family medical leave, the Plaintiff requested and was granted leave that is virtually identical to UOP, LLC's FMLA policy. Next, a juror could also reasonably infer that the Defendants contributed to the interruption of Plaintiff's health benefits. Although Defendants claim that they did not terminate the benefits, Defendants admit to: (1) paying for health care coverage for all employees; (2) ensuring Plaintiff that she will be kept on health care, without being dropped; and (3) requiring the Plaintiff to write some sort of promissory note to Dr. Hammoud, rather than the insurance company. After considering all reasonable inferences, a juror could find that Plaintiff's health care was terminated at least in part to an action

by the Defendants. Therefore, there is an issue of fact regarding whether the Defendants denied the Plaintiff health benefits.

### b. Failure to Reinstate

Next, the Defendants argue that the Plaintiff was never terminated. Instead, Defendants assert that the Plaintiff "never returned from leave, even though she has been specifically told that her job is still available." Dkt. No. 23, p. 14 (Pg. ID 255). This argument is at odds with an affidavit from Vicki Abbas. Ms. Abbas was a Credentialing Coordinator for the Defendants. Dkt. No. 35-16, p. 1 (Pg. ID 550). According to Ms. Abbas, "[i]n 2013, while Joyce Dunlap was on a leave of absence to care for her ill son … Yasser Hammoud[] walked in and said words to the effect that Joyce Dunlap's insurance was terminated and so was Joyce." *Id.*, p. 2 (Pg. ID 551). Ms. Abba's affidavit contradicts the Defendants' argument that the Plaintiff was never terminated, therefore creating an issue of fact.

Factual disagreement about any one of the five elements required for an interference claims could be sufficient to foreclose summary judgment. Given the factual disagreement about: (1) whether the Defendants are covered employers (jointly or integrated); (2) whether there are enough employees to entitle the Plaintiff to family medical leave; and (3) whether the Defendants terminated the Plaintiff's health benefits and fired her, summary judgment is improper on the interference claim.

-15-

*A. Retaliation*

In addition to interference, Plaintiff pleads a retaliation claim. "An employee can establish a prima facie case of retaliation by showing that[:]

> (1) he engaged in protected activity,
> (2) his employer was aware of the protected activity,
> (3) he was subject to an adverse employment action, and
> (4) there was a causal nexus between the protected activity and the adverse employment action."

*Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 432–33 (6th Cir. 2014). "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

Defendants argue that the Plaintiff can only establish that she engaged in protected activity. *See* Dkt. No. 23, p. 11–12 (Pg. ID 252–53) ("The Plaintiff cannot establish that the defendants were aware that she had engaged in protective activity as the defendants rightfully believed that the FMLA did not apply. Nor can the plaintiff establish that she was subject to an adverse employment action (much less that there was a causal connection between these two events)."). Defendants' argument is unpersuasive.

*i.    Protected Activity*

In the Defendants' own papers, they concede that there is an issue of fact regarding whether the Plaintiff engaged in protected activity. *See* Dkt. No. 23, p. 11

(Pg. ID 252) ("Here, plaintiff may only, possibly, establish one of these elements, namely, that she engaged in *protected activity*."). This concession is correct. On October 22, 2013, Plaintiff sent an email to Sue Hammoud (office manager and wife of Dr. Yasser Hammoud). *See* Dkt. No. 23-3. In the email, the Plaintiff explains that, "this is not just unpaid leave I requested unpaid family medical leave to take care of my sick son." Dkt. No. 23-3. Sue Hammoud responded to the Plaintiff's email seemingly confirming that the Plaintiff can take unpaid leave without being dropped from her health insurance. This email alone could lead a reasonable jury to believe that Plaintiff engaged in protected activity (taking family medical leave) and that the employer was aware of it. Therefore summary judgment is not proper based on engagement in protected activity or awareness of protected activity.

### ii.   *Adverse Employment Action*

Next, the parties dispute whether the Plaintiff was terminated or whether she simply did not return to work from leave. In a March 4, 2016 letter to Plaintiff's Counsel, the Defendants explain, "Ms. Dunlap's employment with UOP, LLC was never terminated . . [t]here is no resistance to her return to UOP, if she decides to do that. The company will welcome her back." Dkt. No. 31-2, p.2 (Pg. ID 417). Nevertheless, according to former UOP employee Vicki Abbas, "while Joyce Dunlap was on a leave of absence to care for her ill so . . . Yasser Hammoud[] walked in and said words to the effect that Joyce Dunlap's insurance was terminated and so

-17-

was Joyce" Dkt. No. 35-16, p. 2 (Pg. ID 551). The evidence presented by both sides creates a factual dispute, proper for submission to a jury.

### iii.    Causal connection

"To establish a causal connection, a plaintiff must proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) (internal citations and quotations omitted). The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity. *Id.* "Proof of temporal proximity between the protected activity and the adverse employment action, 'coupled with other indicia of retaliatory conduct,' may give rise to a finding of a causal connection." *Id.*

In this case, Plaintiff requested family medical leave on October 14 or 15, 2013. Dkt. No. 27-2, p.4 (Pg. ID 343). On October 22, 2013, Sue Hammoud confirmed that Plaintiff would not be dropped from her health insurance. Dkt. No. 23-3, p. 2 (Pg. ID 269). On November 1, 2013, Plaintiff's health insurance was terminated. Dkt. No. 27 (Pg. ID 319). At most, eighteen days separated the Plaintiff from the alleged adverse action. Therefore, there is a close temporal proximity. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 524 (6th Cir. 2008) (discussing *Shefferly v. Health Alliance Plan of Michigan,* 94 Fed.Appx. 275, 285 (6th Cir.

2004) ("[T]he passage of less than three weeks between [the employer's] receipt of the charges and the adverse actions gives rise to an inference of discrimination" and "[t]herefore, in this case, [the plaintiff] has established a prima facie case of retaliation"); *see also McNett v. Hardin Cmty. Fed. Credit Union,* 118 Fed.Appx. 960, 965 (6th Cir. 2004) (discussed by *Mickey v. Zeidler Tool & Die Co.*) (finding causation when "only 13 days" separated protected activity from adverse action, reasoning that an "employer's knowledge of the protected activity coupled with an adverse action occurring close in time can create an inference of causation where the particular circumstances strengthen the inference of causation"). Therefore, the close temporal proximity creates a factual dispute regarding causation.

Given this evidence and the low threshold showing that an FMLA plaintiff must make, Plaintiff has made out a prima facie case of retaliation, which survives summary judgment.

### B. Breach of Contract

In their Counter-complaint, Defendants allege that Plaintiff breached her employee agreement. The agreement states, "[y]ou agree that during the term of your employment, or thereafter, that you will not disparage UOP, or its officers, directors, or employees, or in any way disseminate unfavorable information about UOP, its officers, directors or employees." Dkt. No. 2-1, p. 3 (Pg. ID 30). According to the

Counter-complaint, Plaintiff breached her employee agreement when she made disparaging comments about UOP, LLC to a local newspaper.

The newspaper article, titled "Dearborn: Family hopes for help as son fights leukemia," is written by Katie Hetrick and dated November 19, 2013. Dkt. No. 23-4, p. 2 (Pg. ID 272). The article states that Plaintiff "was forced to take another leave from United Outstanding Physicians, where she works as a biller… [h]er employer is trying to drop the rest of the family from its insurance, and she is not sure whether she will have a job when she gets back." *Id.*

Plaintiff moves for summary judgment on this breach of contract counterclaim. Plaintiff argues that the counterclaim fails as a matter of law because the Plaintiff: (1) failed to provide evidence of the terms of the contract; (2) failed to provide evidence that Ms. Dunlap uttered disparaging remarks; and (3) failed to establish with reasonable certainty the damages suffered. Defendants did not respond to this motion, nor did they argue against it.

### i.   *Terms of the contract*

Defendants' argument that the Plaintiff failed to provide evidence of the terms of the contract is factually incorrect. It their Counter-complaint, Defendants attach a copy of the employee agreement. *See* Dkt. No. 2-1. The agreement appears to be signed by both the Plaintiff and Dr. Hammoud. *Id.*

## ii.   Disparaging remarks

Merriam-Webster defines disparage as "to lower in rank or reputation" or to "depreciate by indirect means (as invidious comparison)."[2] The article is titled, "Family hopes for help as son fights leukemia". Although the article is written by Katie Hetrick, quotes from Joyce Dunlap and her husband comprise about half of the article. An unquoted portion of the article claims that United Outstanding Physicians is "trying to drop the rest of the family from its insurance". Dkt. No. 23-4, p.2 (Pg. ID 272). A reasonable juror could find the article disparaging because the tone of the article portrays United Outstanding Physicians negatively—as obstructing a child's need for medical treatment. Although those particular words are not directly quoted, a reasonable jury could find that the author paraphrased remarks from the Plaintiff.

## iii.   Damages

Finally, Plaintiff argues that Defendants failed to sufficiently allege damages. Plaintiff is correct. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Even though the complaint need not contain "detailed" factual allegations, its "factual

---

[2] https://www.merriam-webster.com/dictionary/disparage.

allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic,* 550 U.S. at 555). "Despite this, more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements." *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (internal citations and quotations omitted). "The party asserting a breach of contract has the burden of proving its damages with reasonable certainty[.]" *Alan Custom Homes, Inc. v. Krol*, 256 Mich. App. 505, 512, 667 N.W.2d 379, 383 (2003).

In this case, Defendants claim that, "[a]s a direct and proximate result of [Plaintiff's] disparaging comments and statements, UOP, LLC has suffered damages." Dkt. No. 2, p. p (Pg. ID 26). That is the only reference to damages in the Defendants' three-page Counter-complaint. Without any response (written or oral) to the Plaintiff's Motion for Summary Judgment, Defendants' one-sentence reference to uncertain and unspecified damages is nothing more than a bare assertion of a legal conclusion. Therefore, because Defendants failed to properly allege all elements, their breach contract claim cannot survive Plaintiff's Motion for Summary Judgment.

## V.   <u>Conclusion</u>

For the foregoing reasons, the Court **DENIES** Defendants' Motion for Summary Judgment [23] and **GRANTS** Plaintiff's Motion for Summary Judgment [22].

**SO ORDERED.**

Dated: January 30, 2017

Detroit, MI

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, January 30, 2017, by electronic and/or ordinary mail.

/s/Tanya Bankston
Case Manager, (313) 234-5213